UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kristin Rubin,<br><br>*Plaintiff*,<br><br>vs<br><br>The Mayo Clinic; a Minnesota non-profit corporation,<br><br>*Defendant*. | Court File No. 22-cv-1427<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kristin Rubin ("Plaintiff Rubin") makes the following allegations for her complaint against the Defendant Mayo ("Defendant Mayo").

## INTRODUCTION

1. In October, 2021, Defendant Mayo mandated that all employees receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate"). Many of Defendant Mayo's employees, including Plaintiff Rubin, objected to receiving these vaccinations because of their sincerely-held religious beliefs. Plaintiff Rubin filed a request for a religious exemption with Defendant Mayo to be exempt from taking the Covid-19 vaccination. Defendant Mayo granted the requested religious exemption, but conditioned it on Plaintiff Rubin receiving weekly COVID testing, which vaccinated employees did not have to receive. However, only a couple of months after terminating Plaintiff Rubin, Defendant Mayo reversed the testing requirement for unvaccinated employees, demonstrating that the terminations were unnecessary or a pretext.

2.      Based on Defendant Mayo's implementation of the Vaccine Mandate and its refusal to grant Plaintiff Rubin her request for a religious exemption, without the testing conditions, Plaintiff Rubin brings claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA") based on Defendant Mayo mandating a vaccine, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

## JURISDICTION AND VENUE

3.      Plaintiff Rubin has fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4.      This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiff Rubin's state law claims pursuant to 28 U.S.C. §1367.

5.      This Court has personal jurisdiction over Defendant Mayo as it is a non-profit corporation operating in and located in the State of Minnesota.

6.      Defendant Mayo is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

7. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and Defendant Mayo conducts business in the State of Minnesota.

## PARTIES

8. Plaintiff Rubin is a former employee of Defendant Mayo.

9. Defendant Mayo is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

10. Plaintiff Kristin Rubin is 52 years old and a Minnesota resident who worked as a CT technologist for Mayo for over 25 years. Plaintiff Rubin requested a religious exemption from the Vaccine Mandate and it was granted, but then conditioned on Plaintiff Rubin receiving weekly COVID-19 testing.

11. Plaintiff Rubin is a Christian who believes in God the Father, Son, and Holy Spirit, and that as a believer she asked the Lord to come into her life. Now the Holy Spirit dwells in her and she believes her body is a temple for the Holy Spirit that she is duty bound to honor. She does not believe in putting unnecessary vaccines or medications into her body, or going to the doctor or allowing testing of her body when it is not necessary. Accordingly, it violates her conscience to take the vaccine or to engage in weekly testing or sign a release of information that gives out her medical information.

12. Defendant Mayo terminated Plaintiff Rubin's employment on February 18, 2022 based on her refusal to take the Covid-19 vaccine or submit herself to weekly COVID-19 testing. Plaintiff Rubin filed a charge with the EEOC and received a Right to Sue letter from EEOC dated February 25, 2022.

13. Plaintiff Rubin has had glowing positive job performance reviews, including after the Covid-19 Pandemic was underway. Plaintiff Rubin was given an award for Recognition for Teamwork in January 2022. Prior to that she had been honored consistently throughout her employment, including that: "Kristin goes over the top to be at work and show her dedication to Mayo."

## FACTS

14. During the pandemic in 2020 and 2021, Plaintiff Rubin was asked to work her own and frequently additional shifts in order to cover the increase in treatment and care for patients during the height of the Covid-19 pandemic. At that time, Plaintiff Rubin, while unvaccinated, continued to provide patient care while employed by Defendant Mayo.

15. Defendant Mayo recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated—and on September 28, 2021 the President and CEO of Mayo Clinic (Gianrico Farrugia, M.D.), along with the Chief administrative Officer (Jeff Bolton) wrote to Mayo's employees:

> "*On behalf of the leaders of Mayo Clinic's sites and shields, thank you for the compassionate care you provide to our patients, your excellent service to Mayo Clinic, and the supportive and collaborative environment you create for all of our colleagues. We truly appreciate you and your efforts to live our values every day*."

16. However, just two weeks later, Defendant Mayo implemented its Vaccine Mandate. The Vaccine Mandate stated that "all Mayo Clinic staff members" must get vaccinated with one of the Covid-19 vaccines or else the employees would be considered "noncompliant," later "placed on unpaid leave," and eventually "terminated." The

4

Vaccine Mandate applied to "all staff, including remote workers," of which Defendant Mayo had many. Recognition of the important work performed by the unvaccinated employees disappeared only two weeks after being celebrated.

17. The Vaccine Mandate was announced on October 13, 2021. Defendant Mayo's policy required all staff to become vaccinated against Covid-19, and that if they were not already vaccinated or only partially vaccinated, they would have to become vaccinated or be approved for a medical or religious exemption by December 3, 2021, or be terminated.

18. On October 25, 2021, Defendant Mayo sent a communication outlining the steps to comply with the Covid-19 vaccination policy. Beginning on December 3, 2021, Defendant Mayo issued Final Written Warnings to noncompliant staff with instructions on complying by January 3, 2022, or be terminated.

19. Defendant Mayo announced that there were both medical and religious exemptions from the Vaccine Mandate, and did allow for employees to apply for "*medical and religious exemptions*" to the Vaccine Mandate, and even provided "*forms*" for such applications.

20. However, what Defendant Mayo gave with one hand, it took away with the other by proclaiming that "*it is anticipated that a <u>small number of staff will have qualifying religious exemption</u>*." (emphasis added) It further wrote: "*applications for a religious exemption will be denied if the panel determines the applicant <u>does not demonstrate a sincerely held religious belief</u>*, (emphasis added). Further, Defendant

Mayo declared: *"[o]nly a <u>small number of staff are expected to qualify for a religious exemption</u>."* (emphasis added).

21. Defendant Mayo thus put itself in the position of deciding the sincerity of the religious belief of the Plaintiffs and, whether a belief was "religious" or not.

22. Defendant Mayo also expressed limitations to the "*medical exemption*" to the Vaccine Mandate by stating: "*The only absolute medical contraindications to vaccination for COVID-19 are severe or immediate reaction to a prior dose of the vaccine, known allergy to a vaccine component, or a preexisting and clinically diagnosed fear of needles.*" Other medical conditions were preemptively discounted or disregarded.

23. Defendant Mayo created an ad hoc panel to review such exemption requests. As noted above, Plaintiff Rubin submitted a request for an exemption, but Defendant Mayo denied nearly every request for religious exemption, with the exception that some were granted, but conditioned upon submission to invasive, supervised weekly testing.

24. As a result of Defendant Mayo's policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those who refused the Covid-19 vaccinations who were not able to obtain a religious or medical exemption.

25. Consistent with Defendant Mayo's instructions that employees could request a religious exemption to the Covid-19 Mandate, Plaintiff Rubin completed her request for a religious exemption on or about October 29, 2021.

26.     Plaintiff Rubin is a Christian who believes in God the Father, Son, and Holy Spirit, and that as a believer she asked the Lord to come into her life. Now the Holy Spirit dwells in her and she believes her body is a temple for the Holy Spirit that she is duty bound to honor. She does not believe in putting unnecessary vaccines or medications into her body, or going to the doctor or allowing testing of her body when it is not necessary. Accordingly, it violates her conscience to take the vaccine or to engage in weekly testing or sign a release of information that gives out her medical information

27.     Plaintiff Rubin's request for a religious exemption was granted in November 2021.

28.     However, in December 2021 Plaintiff Rubin's religious exemption was conditioned on her obtaining weekly testing for COVID-19.

29.     On or about January 10, 2022 Plaintiff Rubin requested a religious exemption to the weekly testing on the basis that her religious beliefs did not permit her to take the vaccine or subject herself to weekly testing, which additionally, vaccinated employees did not have to take.

30.     On January 12, 2022, Plaintiff Rubin's religious exemption to testing was denied.

31.     Plaintiff Rubin sought clarification on Defendant Mayo's criteria for determining whether a religious belief constituted a "sincerely held religious belief," and the basis for Defendant Mayo determining that Plaintiff Rubin did not have a "sincerely held religious belief," but the Plaintiff Rubin was simply given the generalized, identical language in the letters.

7

32. On January 19, 2022 she was place on unpaid leave, and on February 18, 2022 she was terminated.

33. In its form denial letters, Defendant Mayo announced that it would accept appeals of its uniform denial decisions. "*If you would like to submit additional clarifying information, you may submit a reconsideration request here*." She requested additional information about the testing policy but was given no further explanation. No interactive process was used to evaluate the requests for exemptions.

34. Defendant Mayo did not provide information about its process for determining whether the employees sincerely held religious beliefs would be accommodated either.

35. Defendant Mayo staff were further instructed to *"endorse the vaccine or say nothing."*

36. Defendant Mayo terminated Plaintiff Rubin' employment on February 18, 2022 based on her refusal to submit herself to weekly testing despite the fact that Defendant Mayo's vaccinated employees were contracting and transmitting the Omicron and Delta variants at substantially similar rates to their unvaccinated employees and were not required to submit to weekly testing.

37. Plaintiff Rubin filed a claim with the EEOC and received a Right to Sue letter from the EEOC dated February 25, 2022.

38. Plaintiff Rubin submitted good-faith statements of her sincerely-held religious beliefs, with explanations of how her faith constrained her from accepting the Covid-19 vaccination and submitting to weekly testing when she was not exhibiting any

8

symptoms. Defendant Mayo's *ad hoc* panel nevertheless denied Plaintiff Rubin's request for an exemption and made no effort to accommodate her request for a religious exemption from testing which was clearly unnecessary because her vaccinated counterparts were not being required to test and were contracting the Delta and Omicron variants at substantially similar rates. Further, Defendant Mayo never considered allowing Plaintiff Rubin to be accommodated by simply doing her job in the way she had been doing it for over one and one-half years prior to Defendant Mayo instituting its Vaccine Mandate and caring for patients with no concrete data supporting provider to patient transmission being a problem which needed to be addressed.

39. The Covid-19 vaccines are being mandated for the employees to be "fully vaccinated," despite the phrase "fully vaccinated" having a definition that has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

40. Defendant Mayo mandated its employees, including Plaintiff Rubin, take the Covid-19 vaccine despite accumulating evidence that the vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 when you get it.

41. While many claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, at the time of Plaintiff's termination, the majority of people testing positive for Covid-19 were vaccinated to one extent or another.

9

42. The numbers of patients hospitalized because of Covid-19 positive status has also been overstated because many were hospitalized for other causes, not because of Covid-19.

43. Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendant Mayo has done as set forth above.

44. Early on in the Covid-19 pandemic, and before any vaccines were available, Defendant Mayo provided free testing to determine "*how many Mayo Clinic staff have developed antibodies against SARS-Co-V-2,*" and thus possessed natural immunity. Plaintiff tested positive for Covid-19 during her suspension in early February 2022 and possessed natural immunity to infection prior to her termination.

45. Rather than disclosing the results of its determination on the numbers of Defendant Mayo "staff" that "have developed antibodies against SARS-Co-V-2," or disclosing studies on the "duration of immunity after Covid-19," (which some studies have asserted are many times more effective than vaccine immunity), Defendant Mayo has not made public this information and instead issued its Vaccine Mandate.

46. On March 8, 2022, Defendant Mayo announced that it would suspend its Vaccine Mandate testing program. As a result, Defendant Mayo's remaining unvaccinated employees are now treated similarly to vaccinated employees.

47. After terminating the Plaintiff Rubin, Defendant Mayo suspended weekly testing effective March 14, 2022. This means that those employees (like Plaintiff Rubin)

who would have had their religious exemptions granted, contingent on weekly testing, and were terminated between January 2022 and March 14, 2022, would no longer be forced to test weekly, and would no longer be terminated for objecting to testing, which Defendant Mayo has now determined is unnecessary.

## FIRST CAUSE OF ACTION

**Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964**

48. Plaintiff Rubin restates and realleges paragraphs 1 through 47 as if fully set-forth herein.

49. Defendant Mayo is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

50. Plaintiff Rubin is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

51. Plaintiff Rubin has a sincerely held religious belief which prevented her from receiving the vaccine or submitting herself to weekly testing. Plaintiff Rubin's beliefs arise because of her Christian beliefs.

52. Plaintiff Rubin informed Mayo of the conflict between her religious belief and the Vaccine Mandate.

53. Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id*. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id*. § 2000e(j).

54. The law prohibits Defendant Mayo from scrutinizing what it believes to be the sincerity of Plaintiff Rubin's religious beliefs, or whether Plaintiff Rubin's exercise of

their beliefs is logical or as consistent as Defendant Mayo believes the exercise of those religious beliefs should be.

55. Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

56. In response to Plaintiff Rubin's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant Mayo and its ad hoc panel applied a uniform, blanket rule in rejecting nearly all, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation.

57. Despite the Plaintiff Rubin's consistent requests for Defendant Mayo to engage in an interactive process regarding her request for accommodation, Defendant Mayo refused throughout to engage in the interactive process and instead rejected Plaintiff Rubin's request for an exemption for identical reasons as other Defendant Mayo employees using an identical form letter.

58. As set forth above, Defendant Mayo could have accommodated Plaintiff Rubin's request for a religious exemption without suffering any undue hardship by having her continue to do her job the same as she had done for the last one and one-half years.

59. Defendant Mayo's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

60. Because of Defendant Mayo's unlawful actions, Plaintiff Rubin suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### State law religious discrimination claim under MHRA 363A.08

61. Plaintiff Rubin restates and realleges paragraphs 1 through 60 as if fully set-forth herein.

62. Minn. Stat. Sec. 363A.01, et seq. prohibits discrimination in employment based on religion.

63. Defendant Mayo is an "employer" within the meaning of Minn. Stat. 363A.01.

64. Plaintiff Rubin is an "employee" within the meaning of Minn. Stat. 363A.01.

65. Plaintiff Rubin has a sincerely held religious belief which prevented her from receiving the Covid-19 vaccine, or submitting herself to weekly testing.

66. Plaintiff Rubin informed Defendant Mayo of the conflict between her religious belief and the Vaccine Mandate and testing requirement.

67. Minn. Stat. 363A.01 et seq. prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

68. Minn. Stat. 363A.01 et seq. prohibits Defendant Mayo from scrutinizing what it believes to be the sincerity of Plaintiff Rubin's religious beliefs, or whether Plaintiff Rubin's exercise of their beliefs is logical or as consistent as Defendant Mayo believes the exercise of those religious beliefs should be.

69. In response to the Plaintiff Rubin's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant Mayo and its ad hoc panel applied a uniform, blanket rule in rejecting nearly all, in violation of the law on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

70. Despite Plaintiff Rubin's request for Defendant Mayo to engage in dialogue, Defendant Mayo refused throughout to engage in the interactive process, and instead rejected Plaintiff Rubin for generalized reasons, using an identical form letter.

71. Defendant Mayo's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Minn. Stat. sec. 363A.01 et seq.

72. Because of Defendant Mayo's unlawful actions, Plaintiff Rubin has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## THIRD CAUSE OF ACTION

### Discrimination and Failure to Accommodate under the ADA, 42 U.S.C. § 12101 *et seq.*

73. Plaintiff Rubin restates and realleges paragraphs 1 through 72 as if fully set-forth herein.

74. Defendant Mayo is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A).

75. Plaintiff Rubin is an "employee" within the meaning of 42 U.S.C. § 12111(4).

76. The ADA, at 42 U.S.C. § 12112 (d)(4)(a), prohibits employers from requiring current employees to undergo medical examinations or inquires unless it is job related and consistent with business necessity.

77. Defendant Mayo's Vaccine Mandate violated 42 U.S.C. § 12112 (d)(4)(a).

78. As a result of Defendant Mayo's wrongful actions, Plaintiff Rubin suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION

### Wrongful Discharge - Minnesota Refusal of Treatment Statute.

79. Plaintiff Rubin restates and realleges paragraphs 1 through 78 as if fully set-forth herein.

15

80. Minn. Stat. §12.39 creates a right for individuals "to refuse medical treatment, testing, physical or mental examination, [or] vaccination. . . ." The law further requires that those health care professionals administering vaccination notify the individual of the right to refuse the vaccination. *Id.* §12.39, Subd. 2 (the "Refusal of Treatment" statute).

> "… individuals have a fundamental right to refuse medical treatment, testing, physical or mental examination, vaccination, participation in experimental procedures and protocols, …". Further, "before performing … vaccination of an individual … a health care provider shall notify the individual of the right to refuse the … vaccination, …".

81. Plaintiff Rubin is an "individual" who has a "fundamental right" to "refuse medical treatment and "vaccines," "testing," or "physical … examination."

82. Defendant Mayo is a "private entity" and a "health care provider" who is obligated to "notify the individual of the right to refuse vaccinations" and "testing."

83. The State of Minnesota is no longer under a state-declared "emergency," as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

84. Plaintiff Rubin has objected to being required to undergo compulsory medical treatment, including invasive injections, vaccinations, testing, and physical examination. This refusal is protected by Minn. Stat. §12.39, and constitutes a refusal to engage in conduct contrary to Minnesota Public Policy. As a result of Plaintiff Rubin's refusal to accede to Defendant Mayo's imposition of such illegal conditions, Plaintiff Rubin has been harassed, suspended, discharged (explicitly or constructively), and had her earned benefits taken away.

85. Defendant Mayo's actions in punishing the Plaintiff Rubin for refusing to engage in conduct prohibited by state law and public policy constitutes wrongful discharge. Defendant Mayo admitted in 2021 that vaccinations, testing, and physical examinations could not be mandatory and must instead be voluntary. Defendant Mayo changed its policy in October 2021. Subsequently, in March, 2022, Defendant Mayo changed its policy again to no longer require weekly testing for unvaccinated employees.

86. As a result of Defendant Mayo's illegal actions taken against Plaintiff Rubin, Plaintiff Rubin has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FIFTH CAUSE OF ACTION
### Breach of Contract/Promissory Estoppel

87. Plaintiff Rubin restates and realleges paragraphs 1 through 86 above as if fully set-forth herein.

88. Defendant Mayo had a policy of honoring diversity, equity and inclusion, including the protection of the religious rights of its employees.

89. Defendant Mayo wrote that it "is committed to upholding laws prohibiting discrimination and/or harassment on the basis of race, color, creed, *religion,* gender, *age*, national origin, marital status, sexual orientation, veteran's status, *disability*, or status with regard to public assistance." (emphasis added).

90. Defendant Mayo's policies and statements created a contract between it and its employees.

91. Defendant Mayo's actions in terminating Plaintiff Rubin, discriminating against her on the basis of her religious beliefs, constitutes a breach of that contract.

92. Plaintiff Rubin has been damaged by Defendant Mayo's breach of contract.

93. In the alternative, Defendant Mayo's promises to its employees, both written and verbal, created an expectation on which the employees, including Plaintiff Rubin, relied to her detriment. Defendant Mayo's promises to its employees, including Plaintiff Rubin, should be enforced to avoid injustice.

## JURY DEMAND

Plaintiff Rubin demands a trial by jury on all claims and issues for which they have a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rubin above-named prays for judgment in her favor and against Defendant Mayo and for an Order of the Court as follows:

1. Adjudging that Defendant Mayo is liable to Plaintiff Rubin for her actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2. Enjoining Defendant Mayo from taking further illegal action against Plaintiff Rubin in violation of both state and federal law, and Ordering Defendant Mayo

to take action to restore Plaintiff Rubin to her positions they would have enjoyed absent Defendant's illegal conduct;

3. Awarding Plaintiff Rubin her costs, reasonable attorney fees, prejudgment interest, and any other relief permitted by statute; and

4. Awarding such other relief as the Court may deem just and equitable.

Dated: May 26, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
*Attorneys for Plaintiff Kristin Rubin*